Wyoming Borough, Appellant *v.* Wyco Realty Co., Bernard Bartoli and David Marchesini and Eve Marchesini, his wife, Appellees.

Argued November 19, 1981, before Judges MENCER, ROGERS and CRAIG, sitting as a panel of three.

*William F. Anzalone, Hourigan, Kluger & Spohrer Associates,* for appellant.

*Joseph C. Giebus,* for appellees.

Opinion by Judge Mencer, February 5, 1982:

In this eminent domain case, Wyoming Borough has appealed from an order of the Court of Common Pleas of Luzerne County which overruled the Borough's preliminary objections to a petition for the appointment of viewers filed by Wyco Realty Company, Bernard Bartoli, David Marchesini and Eve Marchesini (Wyco).

Wyco Realty Company purchased a 49.32-acre parcel of land in Wyoming Borough in 1961, and Bernard Bartoli purchased an adjacent 7-acre parcel in 1966. Mr. and Mrs. Marchesini have entered into an agreement to purchase both parcels of land. At the time of these purchases, the property was zoned R-2 (Two-family and Apartment Residence District) and, sometime prior to 1977, the property was improved with an apartment complex.

In 1977, Wyoming Borough adopted a Flood Plan Management Regulation which became Article XIII of the Borough's zoning ordinance. A dispute arose as to whether the 56.32 acres in question here were within an F-1 Zone (floodway designation) or an F-2 Zone (flood-fringe designation). After an engineering study, it was determined that the property was in an F-1 Zone, where construction or reconstruction of any building facility was prohibited.

Wyco requested a special exception to modify the existing 7-unit modular apartment into a 7-unit apartment building. This application was denied and Wyco filed an appeal to the Court of Common Pleas of Luzerne County but, on April 26, 1979, Wyco caused the appeal to be discontinued.

The property in question has been considered as a ponding basin since 1957 when the United States Army Corps of Engineers completed a project of rerouting Abrahams Creek.

Following the adoption of the Flood Plan Management Regulations, Wyco petitioned, under Section 502 (a) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-502(a), for appointment of viewers. The Borough filed preliminary objections to the petition for appointment of viewers and, as we noted, the lower court overruled the preliminary objections and this appeal followed.

We are confronted, as we were in *Gaebel v. Thornbury Township,* 8 Pa. Commonwealth Ct. 399, 303 A.2d 57 (1973), with the contention that petitioners can seek damages under the provisions of the Eminent Domain Code for the effect upon their property of a change in a zoning ordinance. We held in *Gaebel* that the exclusive procedure for challenging a zoning regulation, on the basis that it is confiscatory, is under the provisions of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§10101-11202. The Supreme Court of California reached a similar holding in *Agins v. City of Tiburon,* 24 Cal. 3d 266, 598 P.2d 25, 157 Cal. Rptr. 372 (1979), concluding that a landowner who is the victim of an excessive use of the police power may not recover damages for a de facto taking but must seek to invalidate the zoning regulation. On appeal, the United States Supreme Court, at 447 U.S. 255 (1980), affirmed the California Supreme Court in

*Agins* and held that the enactment of a zoning ordinance could not be considered a taking of property without just compensation.

Since we conclude that our holding in *Gaebel* controls the instant case, we deem it important to reiterate the reasons for our *Gaebel* decision:

In White's Appeal, 287 Pa. 259, 264-65, 134 A. 409, 411 (1926), we find the guideline for the correct disposition of this case where Justice KEPHART (later Chief Justice) stated:

'Police power should not be confused with that of eminent domain. Police power controls the use of property by the owner, for the public good, its use otherwise being harmful, while eminent domain and taxation take property for public use. Under eminent domain, compensation is given for property taken, injured or destroyed, while under the police power no payment is made for a diminuation in use, even though it amounts to an actual taking or destruction of property. . . .

'. . . If there is doubt as to whether the statute is enacted for a recognized police object, or if, conceding its purpose, its exercise goes too far, it then becomes the judicial duty to investigate and declare the given exercise of the police power invalid. . . .'

Gaebels contend the amended zoning ordinance takes their property without just compensation by severely restricting its use. This may be said of every valid zoning ordinance. Justice KEPHART also spoke to this contention in White's appeals when he stated:

'No matter how seemingly complete our scheme of private ownership may be under our system of government, all property is held in

subordination to the right of its reasonable regulation by the government clearly necessary to preserve the health, safety or morals of the people. Obedience to such regulation is not taking property without due process; that clause does not qualify the police power. . . .' 287 Pa. at 265, 134 A. at 411.

The procedure statutorily prescribed for testing the validity of substantive provisions of a zoning ordinance is the exclusive remedy available to one aggrieved by those provisions. Pittsburgh Outdoor Advertising Company v. Clairton, 390 Pa. 1, 133 A.2d 542 (1957). In Taylor v. Moore, 303 Pa. 469, 476, 154 A. 799, 801 (1931), the Supreme Court stated that '[a]ll questions involved in zoning ordinances, whether they relate to confiscation of property or to the effect of any of the provisions of an ordinance, must be heard and considered under the remedy provided by the Zoning Acts of assembly.'

Where a remedy or method of procedure is provided by an act of assembly, the directions of such act must be strictly pursued and such remedy or procedure is exclusive. Knup v. Philadelphia, 386 Pa. 350, 126 A.2d 399 (1956). Here articles IX [53 P.S. §§10901-10916] and X [formerly 53 P.S. §§11001-11011] of the Pennsylvania Municipalities Planning Code (MPC) provided the procedure to be followed when a challenge is made to the validity of any provision of a zoning ordinance. Article X of the MPC was repealed by the Act of June 1, 1972, P.L. 333, No. 93, §18, effective July 31, 1972, and Section 1001 of MPC, 53 P.S. §11001, now reads, in accord with prior prevailing case law, as follows: 'The proceedings set forth in this

article shall constitute the exclusive mode for securing review of any ordinance . . . adopted . . . pursuant to this act.'

*Gaebel,* 8 Pa. Commonwealth Ct. at 401-03, 303 A.2d at 59-60 (footnote omitted).

The lower court considered *Gaebel* but concluded that it was inapposite because not present in that case was "the man-made flooding condition previously created over and upon the subject property by the Borough of Wyoming and the Department of the Army, Corps of Engineers." The lower court reasoned that it was the combination of the man-made flooding condition on the property and the adoption of the Flood Plan Management Regulation that constituted the taking of Wyco's property.[1]

However, if creating the "man-made flooding condition" in 1957 did not constitute a taking of Wyco's property, then it follows that, if a taking occurred, it resulted in 1977 when Wyoming Borough amended its zoning ordinance. Therefore, it was the new provisions of the zoning ordinance pertaining to flood plan management which, either standing alone or in conjunction with the "man-made flooding condition," produced the alleged confiscatory effect upon Wyco's property. Accordingly, we perceive the issue to be the same as the issue confronted by this Court in *Gaebel.* Consequently, we conclude here, as we did in

---

[1] If the taking of Wyco's property had occurred in 1957 when the man-made ponding basin was created by the rerouting of Abrahams Creek by the Corps of Engineers, then Wyco's petition for appointment of viewers is barred by Section 524 of the Eminent Domain Code, 26 P.S. §1-524, which restricts the filing of a petition for the appointment of viewers to a 6-year period from the date when the property has been taken. Even if the 6-year limitation period is computed from the effective date of the Eminent Domain Code, the last permissible date for filing would have been in the year 1970. The petition for appointment of viewers in the instant case was filed on March 24, 1980.

*Gaebel,* that a property owner cannot seek damages under the provisions of the Eminent Domain Code for the effect upon his property of a change in a zoning ordinance.

Order reversed.

### ORDER

Now, this 5th day of February, 1982, the order of the Court of Common Pleas of Luzerne County, dated December 8, 1980, overruling Wyoming Borough's preliminary objections to the petition for the appointment of viewers filed by Wyco Realty Co., Bernard Bartoli, David Marchesini, and Eve Marchesini, is reversed, and said petition for the appointment of viewers is hereby dismissed.

Judge PALLADINO did not participate in the decision in this case.